UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LATOISHA VAN BUREN                                          CIVIL ACTION

VERSUS                                                      NO. 14-2099

PRO SE PLANNING, INC.                                       SECTION "B"(2)

ORDER AND REASONS

Before the Court is Defendant's, Pro Se Planning, Inc. ("Defendant"), Motion to Compel Arbitration, or Alternatively, Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3), or Alternatively, to Transfer Pursuant to 28 U.S.C. §1404(a) (Rec. Doc. 7); Plaintiff's, Latoisha Van Buren ("Plaintiff") opposition thereto (Rec. Doc. 11); and Defendant's Reply (Rec. Doc. 15). Defendant seeks recognition of the enforceability of an alleged arbitration agreement contained in a contract executed with Plaintiff as well as order of this Court dismissing or staying the instant proceedings pending arbitration of this dispute. Alternatively, in the event the Court finds the alleged arbitration agreement unenforceable, Defendant seeks dismissal or transfer of this dispute, pursuant to the terms of a forum selection clause contained in the subject contract designating the state or federal courts of Washington as the venue for disputes arising out of the contract.

**Facts and Cause of Action:**

1

Defendant is a Washington corporation that produces a website through which various services are offered to assist individuals in completing the documentation necessary to achieve their own divorces. (See Rec. Doc. 7-1 at 1).[1] In August of 2014, Plaintiff, a Louisiana resident, sought to obtain a petition for divorce and visited Defendant's website, located at "www.DivorceWriter.com," to that end. (Rec. Doc. 1-1 at 4). On Defendant's website, Plaintiff filled out an online questionnaire relating to her marital status and contracted for the preparation of various legal documents, ostensibly based on her responses to these questions, for which she paid the sum of approximately $149.00. (Rec. Doc. 1-1 at 4). Although the record does not reflect Plaintiff's success in the pursuit of her divorce, her subsequent initiation of the instant putative class action suggests unsuitable results. Plaintiff filed the instant suit in state court in Louisiana on August 13, 2014, seeking recovery of the fees paid by her and all those similarly situated to Defendant. (Rec. Doc. 1-1 at 3). Plaintiff alleges in her putative class action that Defendant is engaged in the unauthorized practice of law in Louisiana, pursuant to La. Rev. Stat. ann. 37:212(A), thereby rendering the contract contrary to public policy and absolutely null. (Rec. Doc. 1-1 at 5-7).

---

[1] Plaintiff cites information from Defendant's website describing its service offerings as "'[a] sophisticated [and] easy to use website [that] allows you to create divorce documents quickly and easily' via an 'online interview.'"

Defendants removed the action to this Court on the basis of diversity jurisdiction and subsequently filed the present motion seeking enforcement of an arbitration provision contained in the Terms of Use to which Plaintiff allegedly agreed to be bound in executing her contract with Defendant.

**Contentions of Movant:**

Defendant argues, first, that the Terms of Use ("TOU") incorporated into its contract with Plaintiff include a binding arbitration agreement which requires the parties to resolve the instant dispute through arbitration. Thus, Defendant moves this Court to dismiss the instant proceedings, or, at the very least, to stay them pending resolution by arbitration.

Alternatively, Defendant contends the forum selection clause included in the TOU designates the exclusive venue for any dispute arising out of or pertaining to the subject matter of the TOU to be state or federal court in Washington. Accordingly, to the extent the Court might find the arbitration agreement (or portions thereof) unenforceable, Defendant argues this Court must dismiss the instant action for improper venue, or alternatively, transfer the matter to the appropriate federal district court in the state of Washington for further consideration.

**Contentions of Opponent:**

Plaintiff opposes arbitration on four grounds. First, Plaintiff argues the arbitration agreement at issue here violates the "effective vindication" doctrine sanctioned by the United States Supreme Court in cases such as *Mitsubishi Motors Corp. v. Soler Chrylser-Plymouth, Inc.*, 473 U.S. 614, 636-37, 105 S.Ct. 3346, 3360, 87 L.Ed.2d 444 (1985) and *Green Tree Fin. Corp.-Alabama v. Randolph.*, 531 U.S. 79, 91-92, 121 S.Ct. 513, 522-23, 148 L.Ed.2d 373 (2000). This, Plaintiff argues, is because the cost of arbitration is likely to far exceed the amount of any potential recovery, thereby operating as an impermissible liability shield for Defendant. Second, Plaintiff argues the arbitration clause is unenforceable as illusory because Defendant has retained the right to unilaterally alter the terms of the agreement at any time without notice to Plaintiff. Third, Plaintiff argues there is no applicable arbitration agreement at all, because the alleged agreement to arbitrate is part of a broader contract that is contrary to public policy and void *ab initio*. Finally, Plaintiff argues the alleged arbitration agreement is unenforceable on grounds of unconscionability, based primarily on its physical appearance (i.e., that it was concealed) and also on the lack of mutuality in terms of its enforcement.

With respect to the forum selection clause ("FSC") discussed *supra*, Plaintiff makes the following arguments. First,

Plaintiff contends the clause is inapplicable in light of its inclusion in a broader contract that is void *ab initio*. Second, Plaintiff argues the FSC violates the terms of 28 U.S.C. §1404(a) (the federal venue transfer statute) by failing to indicate to which specific court's jurisdiction the parties allegedly consented for purposes of venue (*i.e.*, that the clause fails by designating the state *or* federal courts of Washington). Finally, similarly as with the arbitration clause, Plaintiff argues the FSC is unenforceable due to Defendant's alleged unilateral right to alter the terms of the agreement as well as the concealment and lack of mutuality relating to the TOU generally.

**Law and Analysis:**

Section 2 of the Federal Arbitration Act ("FAA") provides:

> A written provision in . . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2.[2] It is trite law at this point that §2 reflects a "liberal federal policy favoring arbitration" and "the

---

[2] The act applies by virtue of the subject contract's indisputable nature as one "evidencing a transaction involving commerce" as well as the express terms of the TOU. See Rec. Doc. 7-3 at 3 ("You and DivorceWriter agree that: (1) the parties are participating in transactions affecting interstate commerce; (2) this abirtration provision and any resulting arbitration are governed by the Federal Arbitraion Act (Title 9 of the United States Code . . . . .").

fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011)(internal citations omitted). Accordingly, courts must enforce arbitration agreements according to their terms, except "upon such grounds as exist at law or in equity for the revocation of any contract." *Concepcion*, 131 S.Ct. at 1746. Arbitration agreements may be invalidated only by "generally applicable contract defenses, such as fraud, duress, or unconscionability," which are, in turn, determined according to applicable state contract law. *Id.; accord Washington Mut. Fin. Co. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)(because the purpose of the Federal Arbitration Act is to give arbitration agreements the same force and effect as other contracts, "courts apply the contract law of the particular state that governs the agreement.").

Additionally, in the context of challenges to the validity of an entire contract, the Supreme Court has established the following propositions:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006)(citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1983)). "But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, 130 S.Ct. 2772, 2778m 177 L.Ed.2d 403 (2010).

In light of the foregoing, a court asked to compel arbitration must conduct a two-step inquiry:

> "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). In conducting this two-step inquiry, courts must not consider the merits of the underlying action. *Snap-On Tools,* 18 F.3d at 1267."

*Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As to the first inquiry, two component questions must be answered: "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question

falls within the scope of that arbitration agreement." *Id.* However, where the arbitration agreement contains a provision referring issues of arbitrability to the arbitrator in the first instance (aka a "delegation clause"), the Supreme Court has recognized an additional layer to the arbitration analysis. As the Court stated in *Rent-A-Center*, *supra*:

> [A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other. The additional agreement is valid under §2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under §3 and compelling arbitration under §4.

561 U.S. at 69-70. Thus, the relevant question is "whether the delegation provision is valid under §2." *Id.* at 70. Importantly, as noted above, the Supreme Court has held that a challenge to the validity of a contract as a whole is insufficient to warrant court intervention in the absence of a specific challenge to the included arbitration agreement. Consequently, in the context of an arbitration agreement containing a delegation clause (which

the Court has construed as an arbitration agreement nested within an arbitration agreement), the party seeking court intervention must further "challenge[] the delegation provision specifically," or the court must "treat it as valid under §2, and must enforce it under §§3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72.

In the instant case, the dispute resolution procedure is set forth in a five-page document entitled "Terms of Use". (Rec. Doc. 7-3).[3] The relevant provisions are set forth as follows:

> IF YOU DO NOT AGREE WITH THESE TERMS OF USE AND DO NOT WISH TO BE BOUND BY THESE TERMS OF USE, DO NOT USE DIVORCEWRITER. BY USING DIVORCEWRITER YOU AGREE THAT YOU ARE AT LEAST 18 YEARS OF AGE, ARE LEGALLY ABLE TO ENTER INTO A CONTRACT AND AGREE TO THESE TERMS OF USE.
>
> . . .
>
> 11. DISPUTE RESOLUTION BY BINDING ARBITRATION
>
> PLEASE NOTE THAT THIS AGREEMENT PROVIDES FOR THE MANDATORY ARBITRATION OF DISPUTES AND INCLUDES A WAIVER OF THE RIGHT TO A JURY TRIAL AND CLASS ACTION WAIVER, AS SET FORTH BELOW.

---

[3] According to the pleadings, in initially contracting for Defendant's services, Plaintiff was required to click a box indicating: "I accept the DivorceWriter terms of use." (Rec. Doc. 11 at 16). Although the TOU were not themselves set forth on the page including the dialogue box wherein Plaintiff entered her payment information, a question mark icon appears next to the above phrase, the clicking of which directs parties to a "Terms of Use" link at the bottom of the page from where users may review the TOU. (Rec. Doc. 11 at 16). The appropriateness of this procedure implicates the enforceability of the arbitration agreement which, as explained below, is a question foreclosed to the Court at this juncture.

Most user issues can be resolved informally by contacting DivorceWriter customer service by e-mail at info@DivorceWriter.com. However, if you have a dispute with DivorceWriter, and you are unable to resolve the dispute informally, you and DivorceWriter agree that upon demand by either you or DivorceWriter, the dispute will be resolved through binding arbitration. A "dispute" is any unresolved disagreement between you and DivorceWriter, regardless of when the claim arose, and includes claims based on contracts, torts, statutes, regulations, common law, and equitable claims. All statutes of limitation applicable to any dispute shall apply in any arbitration between you and DivorceWriter.

YOU AGREE THAT YOU ARE EACH WAIVING THE RIGHT TO A JURY TRIAL OR A TRIAL BEFORE A JUDGE IN COURT.

. . .

You and DivorceWriter agree that: (1) the parties are participating in transactions affecting interstate commerce; (2) this arbitration provision and any resulting arbitration are governed by the Federal Arbitration Act (Title 9 of the United States Code); (3) *the arbitrator shall decide any dispute regarding the interpretation, application, or enforceability of this arbitration provision*; (4) neither party will disclose, to any third party, any information obtained from the other party in the arbitration proceeding, except as required by applicable law; and (5) neither party will be entitled to rely on any arbitration award, finding of fact, or conclusion of law issued in any other arbitration proceeding involving only one of the parties. This arbitration provision shall survive the termination of any other contract between you and DivorceWriter.

(Rec. Doc. 7-3 at 3)(emphasis added). As the foregoing clearly reflects, the challenged dispute resolution clause calls not only for arbitration of disputes relating to the underlying contract, but refers issues of the "interpretation, application, or enforceability of the arbitration provision" itself to the arbitrator; *i.e.,* it includes a delegation clause. *See*, *Rent-A-Center*, 561 U.S. at 71 (deeming provision giving arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . . of [the] Agreement" a delegation clause).[4] Although neither party specifically addresses the import of the delegation clause in pleadings, the presence of this provision effectively ends the Court's inquiry. Following, as this Court must, the Supreme Court's *Prima Paint* and *Rent-A-Center* line of decisions, the Plaintiff's failure to articulate a specific challenge to the delegation clause requires the Court to abstain from deciding the merits of any dispute concerning enforceability of the arbitration agreement or the underlying

---

[4] Delegation is further supported here by the designated arbitral forum and rules. The TOU state that each arbitration "will be administered by the American Arbitration Association (the "AAA") according to its Commercial Arbitration Rules and the Supplementary Procedure for Consumer-Related Disputes (together, the "AAA Rules"). (Rec. Doc. 11-3 at 3). The Fifth Circuit has recognized: "The AAA Rules for commercial arbitration include Rule 7, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." In *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* we concluded that express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. 687 F.3d 671, 765 (5th Cir. 2012)(collecting cases)." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014).

contract and refer the matter to arbitration. *See, e.g., Rent-A-Center*, 561 U.S. at 77 (Stevens, J., dissenting)("Even when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge *to the arbitrator* unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator--the so-called 'delegation clause.'")

As noted above, even in the absence of a delegation provision, this Court may only entertain challenges to the validity of the arbitration agreement specifically, rather than to the contract as a whole. *See Buckland*, 546 U.S. at 448-49 ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Even if the Court were to afford Plaintiff the benefit of characterizing her arbitration-specific challenges as pertaining to the delegation clause particularly, these would be limited to: (1) a challenge to the fee arrangement called for under the arbitration agreement (See Rec. Doc. 11 at 9) and (2) a challenge of substantive unconscionability (Plaintiff argues the clause is illusory and lacks mutuality) (See Rec. Doc. 9 at 12).[5] Because

---

[5] Plaintiff's other challenges implicate the validity of the underlying agreement as a whole and therefore fail to raise the type of arbitration-

the Court decides the instant motion on other grounds, there is no need to address the merits of these particular challenges in any detail. However, the Court writes briefly to note the improbability of their success in the context of a challenge to the enforceability of the arbitration agreement as a whole.

As the Supreme Court noted in *Green Tree Fin. Corp.-Alabama v. Randolph*, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. 79, 91-92, 121 S.Ct. 513, 522-23, 148 L.Ed.2d 373 (2000). This, in turn, has been interpreted to require the Plaintiff to show that her particular circumstances would render her unable to afford any required fees of arbitration. *See, e.g., Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 309-10, 103 P.3d 753, 763-63 (2004)(conscionability of fee-splitting provisions is to be determined in the context of the particular circumstances of the parties); *accord Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268-69 (3d Cir. 2003)(plaintiff must produce evidence showing an inability to pay and information regarding arbitration costs); *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999)(plaintiff produced sufficient evidence showing he could not afford arbitrator's fees); *Bradford v. Rockwell*

---

specific challenge required by *Prima Paint* and progeny at this stage of the proceedings.

*Semiconductor Sys., Inc.*, 238 F.3d 549, 557-58 (4th Cir. 2001)(plaintiff must produce specific evidence showing that he could not afford the arbitrator's fees).[6] Although Plaintiff has provided some evidence of the fees that could be charged were the matter referred to AAA Arbitration, there has been absolutely no showing of Plaintiff's particular means or ability to cover these fees (nevermind any showing as to the possibility of recovering fees or costs in the event of a favorable result in arbitration). (See Rec. Doc. 11 at 9-10). As such, Plaintiff's fee-based challenge to the enforceability of the arbitration agreement as a whole is relatively weak (even if it were directed specifically to the delegation clause). Nevertheless, this is an issue properly delegated to the arbitrator under the express provisions of the TOU.

---

[6] Although neither party adequately addresses the issue of which law applies to the contract, the TOU includes a choice-of-law provision designating the laws of the State of Washington. (See Rec. Doc. 7-3 at 4). A federal district court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257-59 (5th Cir. 2014). Louisiana's rules generally will apply the law selected by the parties, pursuant to La. Civ. Code. art. 3540, unless the enforcement of the contract would contravene the public policy of the state whose law would otherwise be applicable under La. Civ. Code art. 3537. Both Washington and Louisiana recognize public policies favoring enforcement of arbitration agreements. *See Mendez v. Palm Harbor Homes, Inc.*, 111 Wash. App. 446, 454, 45 P.3d 594, 599 (2002) ("There is a strong public policy in Washington State favoring arbitration of disputes."); *Aguillard v. Auction Mgmt. Corp*, 04-2804 (La. 6/29/05), 908 So. 2d 1, 18 ("Due to the strong and substantial similarities between our state arbitration provisions and the federal law as seen through a comparison of La. Rev. Stat. §§ 9:4201 and 9:4202 and 9 U.S.C. §§2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions.") In the absence of divergent public policies, there is reason to believe that Washington law, selected by the parties, would govern interpretation of the instant agreement. Accordingly, the standards for challenging fee arrangements in arbitration agreements endorsed by Washington courts, *supra*, are instructive.

Plaintiff's sole remaining arbitration-related challenge implicates the alleged substantive unconscionability of the agreement. Assuming *arguendo* that Plaintiff correctly characterizes various provisions of the agreement to allow Defendant to unilaterally alter terms of the agreement as well as affording Defendant certain unilateral advantages in opting to compel arbitration, Plaintiff's concerns are effectively mooted by the presence of a "severability clause" in the broader agreement. Paragraph 19 of the TOU provides:

> If any provision of these Terms of Use is found to be unlawful, void or unenforceable, then that provision shall be deemed modified or limited only to the extent necessary to bring it within a legal requirement or will be severable from the Terms of Use and shall not affect the validity and enforceability of the Terms of Use.

(Rec. Doc. 1103 at 4-5). As such, even in the event the Court agreed with Plaintiff's particular conscionability challenges to the arbitration agreement (notwithstanding issues of the failure to challenge the delegation clause specifically), the Court would be bound to modify or excise the offending provision for purposes of rendering that agreement enforceable.[7]

---

[7] Severability clauses are enforced in both Washington and Louisiana, accordingly whichever state's law ultimately applies to the agreement, the Court would be compelled, where possible, to bring any offending provisions of the arbitration agreement into compliance with applicable law, rather than invalidating the provision as a whole. *See, e.g., SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 5/29/01) 808 So.2d 294, 309 ("In light of this severability clause which reflects the parties' intent and in accordance with this court's decision in *AMCOM*, we, like the court

In light of the foregoing, the Court is bound to compel arbitration of the instant dispute. We turn now briefly to the issues raised in Defendant's motion relating to the propriety of the instant venue. In brief, Defendant argues the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, given the parties' selection of the courts of Washington in the "Governing Law" provision of the TOU. (See Rec. Doc. 7-1 at 10). This argument, however, is without merit. 28 U.S.C. §1391 defines three categories of forum where venue exists.[8] The Supreme Court has recognized that if the chosen forum falls into any one of these categories, venue is proper and the presence or absence of a forum-selection clause in a particular contract has no bearing on the propriety of that venue. *See Atlantic Marine Const. Co., Inc. v. Court for Western Dist. Of Texas*, 134 S.Ct. 568, 577, 187 L.Ed.2d 487 (2013). Plaintiff resides in the Eastern District of Louisiana and was located there when she accessed Defendant's website and received

---

of appeal below, will sever the null clause from the agreement."); *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 320-21, 103 P.3d 753, 768-69 (2004) ("Consequently, when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration.")

[8] These are: (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §1391.

16

the output of Defendant's services which were aimed at facilitating a divorce to occur in Louisiana. (Rec. Doc. 1-1 at 4-5). As such, a substantial part of the events or omissions giving rise to the claim occurred in this district and venue is proper pursuant to 28 U.S.C. §1391(b)(2). The Court therefore will not dismiss this action under Fed. R. Civ. P. 12(b)(3). Any further issues relating to potential transfer under 28 U.S.C. §1404(a) are deferred for possible resolution in the event the matter returns to this Court following submission to arbitration.

## Conclusion

The Supreme Court has spoken in no uncertain terms as to the federal courts' mandate, pursuant to the FAA, to favor enforcement of arbitration clauses save on those generally applicable grounds of state contract law. Plaintiff has failed, for purposes of the instant motion, to surmount the presumption in favor of arbitration, rendered particularly onerous where, as here, the agreement includes both delegation and severability clauses. Accordingly,

**IT IS ORDERED** that the parties submit this matter to arbitration pursuant to the procedures called for under the TOU. **IT IS FURTHER ORDERED** that the case be **STAYED**, pursuant to 9 U.S.C. §3, pending final resolution of all arbitrable issues,

the extent of which is to be determined by the arbitrator as discussed fully, *infra*.

New Orleans, Louisiana this 18th day of November, 2014.


_____
UNITED STATES DISTRICT JUDGE